Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 1126 | **DATE** | 10/14/2004 |
| **CASE TITLE** | McCoy vs. Unicare Life Ins | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ______.

(3) ☐ Answer brief to motion due______. Reply to answer brief due______.

(4) ☐ Ruling/Hearing on ______ set for ______ at ______.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(7) ☐ Trial[set for/re-set for] on ______ at ______.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ______ at ______.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Status hearing held and continued to 12/07/04 at 9:00 a.m. For the reasons stated in the attached memorandum opinion, plaintiff's motion to remand is denied. The plaintiff is given until 10/27/04 to respond to defendant Demorst's motion to dismiss. Defendant Demorst is given until 11/04/04 to file his reply. The remaining defendants are given until 11/10/04 to answer, move or otherwise plead to the plaintiff's amended complaint. Enter Memorandum Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | Document Number |
| | No notices required. | | OCT 18 2004 | 23 |
| | Notices mailed by judge's staff. | | date docketed | |
| | Notified counsel by telephone. | U.S. DISTRICT COURT | JMP docketing deputy initials | |
| ✓ | Docketing to mail notices. | 2004 OCT 18 AM 8:17 | date mailed notice | |
| | Mail AO 450 form. | | mailing deputy initials | |
| | Copy to judge/magistrate judge. | Date/time received in central Clerk's Office | | |
| MW6 | courtroom deputy's initials | | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EUGENE MCCOY,<br><br>Plaintiff,<br><br>v.<br><br>UNICARE LIFE AND HEALTH INSURANCE COMPANY, a corporation; DAVID S. DEMOREST, M.D.; OAK WEST PRIMARY PHYSICIAN ASSOCIATION, INC., a corporation; WESTLAKE COMMUNITY HOSPITAL,<br><br>Defendants. | ) | No. 04 C 1126 |

DOCKETED
OCT 1 8 2004

MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Eugene McCoy's ("McCoy") motion for remand. For the reasons stated below, we deny the motion to remand.

BACKGROUND

Defendant Unicare Life and Health Insurance Company ("Unicare"), is an Independent Physician Association model HMO Plan that contracted with the United States Office of Personal Management. McCoy was enrolled apparently as the



13

spouse or dependent of a federal employee in a Federal Employee Health Benefits Act of 1998 ("FEHBA"), 5 U.S.C. § 8901 *et seq.*, HMO plan provided by Unicare. Defendant Oak West Primary Physician Association, Inc. ("Oak West") is an Independent Physician Association that has a network of contracting health care service providers who render care and services under medical plans, including McCoy's HMO plan.

In November of 2001, McCoy suffered first, second, and third degree burns on his right arm and torso. Physicians at the Loyola University Medical Center performed graft surgery on McCoy. McCoy was released from the hospital on November 27, 2001, and his treating physician ordered McCoy to undergo occupational therapy for the skin graft. McCoy alleges in his amended complaint that Defendant Dr. David Demorest ("Demorest"), acting as an agent and employee for Unicare and Oak West, determined that McCoy could only receive the occupational therapy if he sought the therapy at Defendant Westlake Community Hospital in Melrose Park, Illinois ("Westlake"). McCoy alleges that Westlake "did not possess the requisite skill or knowledge to properly perform occupational therapy on a skin graft patient" (A Compl. Count IV, Par. 9) and as a result he suffered personal and pecuniary injury. (A Compl. Count IV, Par. 10). McCoy brought the instant action in Illinois state court alleging malpractice claims against Unicare, Oak West, Demorest, and Westlake. The action was subsequently removed to federal court. McCoy has now filed a motion to remand.

## LEGAL STANDARDS

A party may file a motion to remand a case for improper removal based on lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c). The party seeking removal bears the burden of establishing federal jurisdiction. *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993). Any doubt regarding jurisdiction should be resolved in favor of remanding to the state. *Id.* Furthermore, removal is only proper where the state-court claims could have originally been brought in federal court. 28 U.S.C. § 1441; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

## DISCUSSION

I. Mixed Plan Eligibility and Treatment Issues

McCoy argues that his claim involves "mixed plan eligibility and treatment issues" and that his claim is therefore the type of claim envisioned in *Pegram v. Herdrich*, 530 U.S. 211 (U.S. 2000). However, in *Aetna Health Inc. v. Davila*, 124 S.Ct. 2488 (2004) the court limited the holding of *Pegram* stating that a "mixed issues" claim referred to in *Pegram* is only applicable to situations where a treating physician is making treatment decisions while simultaneously owning or operating the health plan for the patient and making eligibility determinations. *Id.* at 2500-01. Also, the court in *Pegram* did not specifically address FEHBA. Rather it addressed "mixed issues" claims in the context of ERISA. 530 U.S. at 2153-54.

Oak West argues that it is distinct from Demorest. Oak West claims that it never treated McCoy and never employed Demorest. McCoy alleges in his amended complaint that Demorest was an employee or agent of Unicare and Oak West. (A Compl. Count I, Par. 5, Count II, Par. 3, Count IV, Par. 2). However, it is clear from the other allegations in McCoy's amended complaint that the essential facts concerning Demorest's relationship with Oak West is not contested. McCoy does not, for instance, argue that Demorest received a salary directly from Oak West. Rather, it is apparent that McCoy seeks to have the court infer from the agreed upon set of facts that the relationship was such that Demorest should be deemed an employee or agent of Oak West. McCoy fails however, to cite any case law to support his novel theory that such a connection may be inferred in this instance. Neither does McCoy allege facts that would indicate that Demorest was involved in treatment issues and eligibility issues. Clearly the facts in this action are not the type of facts envisioned in *Pegram* when addressing ERISA. McCoy contends that Demorest treated him, however, there is no indication whatsoever, that Demorest made treatment decisions for Unicare or Oak West and was simultaneously the administrator of McCoy's plan or owned or operated the plan. The facts in this action indicate that the two types of decisions remained separate and distinct. Also, we would be reluctant to simply infer that a new type of mixed issue action has been created in the FEHBA context because a similar type of claim was recognized in the ERISA context. Also as will be discussed below, *Aetna Health Inc. v. Davila*, 124

S.Ct. 2488 (2004) is instructive in the ERISA context regarding the complete preemption of claims.

II. Complete Preemption

Unicare and Oak West removed the instant action to federal court on the basis that McCoy's claims are "fully pre-empted and displaced by FEHBA. . . ." (Rem. Par. 4). Federal courts have federal question subject matter jurisdiction for cases that arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A claim arises "under the laws of the United States if the plaintiff's complaint raises a federal issue." *Lister v. Stark*, 890 F.2d 941, 943 (7th Cir. 1989).

Generally, "[f]ederal pre-emption is ordinarily a federal defense to the plaintiff's suit . . . [,] does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). However, a removal may be warranted under the doctrine of complete preemption, which is an "'independent corollary' to the well-pleaded complaint rule." *Caterpillar Inc.*, 482 U.S. at 393. The complete preemption doctrine allows removal only where Congress has so completely preempted a particular area that no room remains for any state regulation and the complaint would be 'necessarily federal in character.'" *Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 986-87 (7th Cir. 2000); *See also Rogers v. Tyson Foods, Inc.*, 308 F.3d 785, 788 (7th Cir. 2002)(stating that there is complete preemption if

there is a "congressional intent in the enactment of a federal statute not just to provide a federal defense to a state created cause of action but to grant a defendant the ability to remove the adjudication of the cause of action to a federal court by transforming the state cause of action into a federal cause of action").

There are two alternative approaches in case law for the complete preemption doctrine which are referred to as the complete preemption model and the replacement model. *See McQuerry v. American Medical Systems, Inc.*, 899 F.Supp. 366, 369 (N.D. Ill. 1995)(delineating approaches into complete preemption model and replacement model). *See also Rogers*, 308 F.3d at 788 (indicating that replacement model is an approach under complete preemption doctrine). *But see Bastien*, 205 F.3d at 986(indicating that the applicable standard for the complete preemption doctrine is whether Congress intended to completely preempt an area and not leave room for state claims); *Franczyk v. Cingular Wireless, LLC*, 2004 WL 178395, at *1 (N.D. Ill. 2004)(stating that "[i]n some instances, Congress has completely preempted a particular area where there is no room for any state regulation and the complaint is 'necessarily federal in character."")

Under the replacement model "removal is appropriate only if federal law not only preempts the state claim but also replaces it with a federal remedy." *McQuerry*, 899 F.Supp. at 369. According to this line of cases, the "ability to bring suit under [federal law] is an element of 'complete preemption.'" *Rogers*, 308 F.3d at 788. The doctrine of complete preemption is not applicable "if a federal remedy did not exist

in the alternative . . . [because] [o]therwise, a plaintiff would be forced into federal court with no relief available for 'vindicating the same interest.'" *Id.* Federal preemption trumps state law, "but the foundation for removal is the creation of federal law to replace state law." *Id.* Thus, "unless the federal law has created a federal remedy--no matter how limited--the federal law, of necessity, will only arise as a defense to a state law action' and will thus not give rise to federal question jurisdiction underlying complete preemption." *Id.*

In the instant action the main thrust of Defendants' argument is that McCoy's claims are preempted by federal law. Defendants' arguments are mainly limited to the complete preemption model and Defendants fail to provide any arguments regarding the replacement model.

Defendants rely upon *Aetna Health Inc. v. Davila*, 124 S.Ct. 2488 (2004). In *Davila* the court addressed the applicability of the complete preemption doctrine to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, completely preempted certain claims. *Id.* at 2499. Although a comparison between ERISA and FEHBA is instructive, we must also analyze FEHBA itself and Congressional intent.

In 1998 Congress amended FEHBA and broadened the scope of the preemption provision to read as follows:

> The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans.

5 U.S.C. § 8902. The lower federal courts are split on the issue of the applicability of the complete preemption doctrine to FEHBA. *See Haller v. Kaiser Found. Health Plan of the Northwest,* 184 F.Supp.2d 1040, 1046-48 (D. Or. 2001)(explaining that there is a split among the district courts).

We agree with the reasoning set forth in *Doyle v. Blue Cross Blue Shield of Illinois*, 149 F.Supp.2d 427 (N.D. Ill. 2001) and *Rievley v. Blue Cross Blue Shield of Tennessee,* 69 F.Supp.2d 1028 (E.D. Tenn. 1999). The courts in both cases examined the expansive language included in FEHBA stating that the provisions "shall supersede and preempt any State or local law," 5 U.S.C. § 8902, and the courts noted that in 1998 Congress expanded the scope of preemption farther by removing language that limited preemption to circumstances where state law was "inconsistent with" health insurance contracts. 149 F.Supp.2d at 432; 69 F.Supp.2d at 1033-34. The courts also referred to the legislative history regarding the 1998 amendment in which Congress indicated the intent behind the amendment was to "broaden the preemption of State and local laws" to the degree that "FEHB program contract terms which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) *completely displace State or local law* relating to health insurance or plans. . . ." ). H.R.Rep. No. 105-374, at 16 (1997)(emphasis added); 149 F.Supp.2d at 432; 69 F.Supp.2d at 1034. We agree with the court in *Rievley* that Congress has "clearly manifested an intent to preempt state law

regarding the terms and benefits of FEHBA plans." *Id.* at 1034(quoting *Kight v. Kaiser Found. Health Plan of Mid-Atlantic States, Inc*, 34 F.Supp.2d 334, 339 (E.D.Va. 1999)). As the court indicated in *Doyle*, the doctrine of complete preemption is not barred simply because Congress has not specifically stated that the FEHBA area is "completely preempted." 149 F.Supp.2d at 433. Such a requirement of an express statement from Congress is not logical considering the courts' instructions to consider evidence of Congressional intent in addressing the applicability of the complete preemption doctrine. We conclude that there is sufficient evidence that Congress intended to completely preempt claims connected to FEHBA.

We also note that we do not find the opposing case law on this issue to be persuasive. For example, in *State Farm Indemnity v. Fornaro*, 227 F.Supp.2d 229, 239 (D.N.J. 2002) the court held that the doctrine of complete preemption is not applicable to FEHBA. However, the court in making its ruling, relied upon *Goepel v. National Postal Mail Handlers Union, a Div. of LIUNA*, 36 F.3d 306 (3rd Cir. 1994), stating that "*Goepel* is controlling." *Id.* The problem with such reliance on *Goepel* is that the ruling was made prior to the 1998 amendment to FEHBA and the legislative history mentioned above. Thus, the court in *State Farm Indemnity* failed to consider the effect of the 1998 amendment and the legislative history.

Likewise in *Haller v. Kaiser Foundation Health Plan of the Northwest*, 184 F.Supp.2d 1040 (D.Or. 2001) the court noted that the district courts are split on the

issue, but concluded that there is not complete preemption. *Id.* at 1046-47. However, in coming to such a conclusion the court in *Haller* initially relies upon a 1996 case and a 1987 case which were ruled upon prior to the 1998 amendments to FEHBA. *Id.* The court in *Haller* also relied upon *Pegram,* the holding of which has recently been limited in *Aetna Health Inc. v. Davila,* 124 S.Ct. 2488 (2004). *Id.* at 1046. The court in *Haller* also places a great emphasis on case law pertaining to ERISA in concluding that complete preemption is not applicable. *Id.* ERISA and FEHBA are not redundant acts. They serve different purposes and whether or not Congress intended to take the step towards complete preemption in regards to one act or the other act ultimately must be analyzed in accordance with the specific act and Congressional intent of the act. Simply because Congress did or did not intend complete preemption in regards to one of the acts does not dictate a like intention in regards to the other statute. As indicated above, ERISA case law may be instructive, but should not be given too much consideration. Thus, the over reliance in *Haller* on ERISA case law is misplaced. We also disagree with the finding in *Haller* that since there is no provision in the FEHBA providing a remedy for malpractice, that it is a foregone conclusion that any malpractice claims cannot be the subject of complete preemption. *Id.* at 1047-48. A plaintiff cannot circumvent the clear intent of Congress to completely preempt an area of law by phrasing allegations so that they appear to be malpractice allegations and by omitting any reference to the FEHBA. Regardless of the titles and jargon included in a complaint, if it is clear

from the facts in the action that the allegations are essentially contesting the eligibility of benefits rather than treatment decisions, then the claims should properly be deemed what they truly are and the court should not proceed under the pretense that the allegations are legitimate malpractice claims.

We also find that the claims in the instant action fit within the remedy provisions of FEHBA and the scope of the preemption. In the instant action, McCoy attempts to portray Unicare and Oak West's involvement in his medical care as malpractice. However, McCoy's claims against Unicare and Oak West are in essence complaints in regards to the administration of benefits and his dissatisfaction with the administration of his benefits when he was referred to Westlake. There is no indication that Unicare or Oak West had any role in the treatment of McCoy and McCoy cannot artfully attempt to plead around FEHBA, particularly when, as in this instance, Congress has indicated that the complete preemption doctrine is applicable. Therefore, we deny the motion to remand.

## CONCLUSION

Based on the foregoing analysis, we deny the motion to remand.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: October 14, 2004